Richardson, J.
delivered the opinion of the Court.
The case before the Court presents this question: Can an indictment or public prosecution for a misdemeanor — in this instance a libel — be compromised and stopped by the prosecutor and defendant, upon adequate consideration to be paid by the defendant, and secured by his bond? Can such a bond be lawful ? is the specific question.
Upon this question, we have no authoritative decisions to lead us: we must look, therefore, to analogy, to practice, to legal principles, and to consequences, for the argument.
First, then, a prosecution for a felony could not be stopped by such parties. Public policy forbids such perversion of law. (See 4 Blac. p. 133, 134; 1 Hawk. c. 59, sec. 2; Foster Cro. Law, 195; 1 Hale, 75, &c.) In such cases, the very act of compromising a felony, even before prosecution, is an indictable offence. ‘
Again, it is equally clear, that no prosecution for a debt, fine, or pecuniary penalty, or the like, can be so arrested, simply because the State has its right of action, and all the legal rights of individuals in Courts of Justice; which cannot be taken away, or compromisad, by other parties.
From analogy, then, why the State should not have the same exclusive rights in indictments for misdemeanors, does not readily strike the understanding.
*120 As to practice, we have much; and some cases for assaults and batteries, which may seem to assume a right, on the part of the prosecutors, to compromise indictments for such misdemeanors.
The allowance and tendency of prosecuting officers have also fostered such expectations — i. e. when the party injured is satisfied, the prosecution is often discontinued. In such cases, his wishes, even after conviction, often materially lessen the discretionary punishment to be indicted by the presiding Judge: but clearly, not as an individual right.
It is allowed, because such influence may be often very wholesome in its operation and consequences. It enables the Judge to introduce amity in the place of hostility between neighbors, through the interposition of the injured party: the Judge ascribing a merciful sentence to his forgiveness of the defendant. But I do question if any Solicitor or Attorney-General has held the indictment stopped in law by the wishes or compromises of prosecutors and defendants.
The strict right of the State to carry on such prosecutions has, I presume, been always saved: — at least, no clear exception has been established by judicial authority.
The practice, therefore, is by no means conclusive; and I do think the general views of the subject forbid its extension. On this head it may be justly remarked, that misdemeanors —as assaults, batteries with their many complications, conspiracies, false tokens, suborning a witness, receiving stolen goods, swindling, libels, bribery, compounding felonies, illicit trading and retailing, and the like, are not only at the bottom of social disorder and injustice, but the enemies of personal protection, and form the germs of the great felonies.
Repress the numerous class of misdemeanors, and you limit not only homicides, thefts, with its complications and perjuries ; but you obstruct intemperance, by strictly punishing, at its birth, every variety of its outrages. “ Obsta princiiiiis” is the wise rule of prevention — abash vice in its inception; for, as a great moral writer tells us of its fascinations—
“ Seen too oft, familiar with her face,
We first endure. — then pity — then embrace.”
This is the course of vice — impunity in minor offences invites reiteration, and the progress of crime is best bridled when young and small: and thus it is, that the repression of misdemeanors is of the last impoi^ance in practical jurisprudence.
Let any one reflect how the habit of carrying concealed weapons perverts the principles of social duty, and tends to *121 reconcile bloodshed to the human heart — how unlawful trading with slaves leads to receiving stolen goods and dishonest appropriations — how encroachments among neighbors provoke insults, injuries, and hatred — or how even the mere omission of the usual mark of respect — good manners among men — ends in confirmed disrespect and retorts, that lead to violence.
Reflect on such moral observations of our experience, and you will see how wise is the policy that strictly punishes the first steps to crime, and how true is the homely proverbial-phrase — “ an ounce of prevention is worth a ton of remedy.”
How wise then, in public policy, to suffer none but the Solicitor or Attorney-General to stop prosecutions, and the Governor to pardon. The Judge cannot do it, for even he can do no more than counsel the proper officer. This is not unfrequently done; and possibly, erroneous notions may in timé arise out of this practice, similar to the one I have just explained and avoided.
But the privilege must not be so perverted. The power to arrest or suspend public prosecutions, is the high and distinguished- — and, I apprehend, the exclusive privilege of the Attorney-General -or Solicitor, and subjects him and the Governor, when he pardons, to no small moral as well as official responsibility. Bach has great discretionary power, which is truly judicial. For he is to look to the order, interest, and moral growth of his State society, before he exercises his privilege of suspending the due course of legal punishment. But even the Solicitor does not stop the prosecution forever: it may be recommenced. The great consideration is, the good of society — and of this, interested men, seeking gain, are not fit judges.
Add to such views, the fact, that misdemeanors constitute about four-fifths of all public prosecutions, and we see, at' once, what a practical and consequential revolution in the great end of public prosecutions might be brought about by a single adjudication, to sanction the bond of Seigler. But to return:
This case is an instance of the readiness with which mere indulgence in a power begets the assumption of a right, in prosecutors, to exercise it at pleasure.
Forgiveness is a duty, but all just and wise restrictions upon prosecutions or punishments are for the general good, more than for individual mercy. Have mercy on the country, says Sir Matthew Hale.
The question before us is a claim of absolute right on the part of the prosecutor, A. L. Gray. If he had no such right, *122 the bond of the defendant, Seigler, is a nullity, and the non-suit right.
In support of the Circuit decision, we have argued that upon no allowed principle of Jaw or practical justice to all litigants, equally, or of good policy in the order of society, can the Court sanction such anomaly in public prosecutions. It must not creep into a legal right.
If such arguments do not convince — and there has been some hesitation — -look for a moment at the consequences. If once allowed, as an individual right, to compromise and stop such prosecutions, it is difficult to foresee how the love of money might incite to prosecutions, and even to conspiracies, threats, and perjuries, as ready sources of pecuniary emolument to prosecutors, and of facility on the part of defendants in stifling investigation, by pecuniary rewards.
The mere chance of such a source of corruption is hostile to the good of society.
Such a temptation, therefore, to defendants, as well as to prosecutors, must not be justified by judicial authority, to put the Solicitor’s office at. the beck and call of selfish men, by allowing so extraordinary a privilege of interfering with public rights. The motion is dismissed.
Evans, J. Wardlaw, J. and Frost, J. concurred.
Withers, J. did not hear the argument.

Motion dismissed.